Good morning, your honors, and may it please the court. My name is Lisa Lourish, arguing on behalf of the appellant Willie Johnson. The district court erred in this case by finding that Mr. Johnson would have been subject to mandatory life under 18 U.S.C. 3559 because his prior New York robbery offense qualified under the enumerated offense clause of that statute had the government not dismissed the information giving notice of his three prior qualifying felonies as part of his original plea agreement. And, of course, this is an original plea agreement that was 16 years old at the point that we came back before the court for resentencing. And it's important that the district court gave determinative weight to Mr. Johnson's agreement and that original plea agreement to the upward departure to 300 months, the maximum he could have received in that original plea agreement based on... Let me make sure that I have your argument. It was your argument that the New York penal law fails to match up with one of the statutes? That is correct, your honor. All right. That is listed in 35... That's correct. The district court's decision was determined... The district court found that the prior New York robbery offense matched one of the three offenses in the enumerated offense clause of 3559. That was incorrect. Well, isn't it important that the three offenses are mentioned in the disjunctive? In other words, it's 2111, 2113, 2118. But isn't the crucial word there, or... Your honor, I agree that they're in the disjunctive. It can be a match with one of those statutes. Oh, that's correct, your honor. I don't disagree with that. And the reason that the district court erred in finding that the prior third-degree New York robbery matched any of those three, one simple reason, in addition to the reasons that I briefed more fully, is the recent Second Circuit decision in the United States versus Pereira-Gomez that I provided notice of in my letter earlier this week, which conclusively answers this question for the court. Because the Pereira-Gomez decision from the Second Circuit looked at the elements of New York robbery and explicitly found that it lacked the element that the robbery be from the person or presence of another. And that's critical in this case because the government, in its briefing, relies on the Supreme Court's prior decision in Jones versus the United States and says that each of those three offenses, each one, 2111, 2113, and 2118, has as an element that the robbery be from the person or the presence of another. And the Second Circuit has now very recently concluded the opposite, that New York robbery does not have that as an element. I'm sorry to interrupt you on that, but I've read that case, the Snipes case that the district court cited was before that. It's curious to me that the recent case doesn't mention Snipes at all. And Snipes also talks about the definition of robbery, which even if it removes the in the presence of or from cause, has the element of, I find it, force on a person. And so two questions I had about that. One is, do you have any response to the fact that the recent case doesn't address Snipes at all, which has the exact opposite conclusion? And number two, that despite the removal of the clause, the definition of force on another person, does that, in essence, encompass that requirement? Well, Your Honor, with respect to the first question as to why Pereira Gomez may not have referenced the prior Snipes decision, as far as I can tell, the issue of whether presence from a person or in the presence of another, which I'll just refer to as the presence element, so I'll stop stumbling over it, was not addressed in the Snipes decision. And so it wasn't argued. And so in making this determination now that that is an element of New York robbery, which, of course, they were doing so in the Pereira Gomez decision, comparing New York robbery to generic robbery, and not specifically comparing it to the enumerated offenses in 3559, I think that the fact that Snipes is not referenced doesn't take away from the very conclusive determination in Pereira Gomez that New York robbery is different. And we have, with respect to the Pereira Gomez discussion of the force clause analysis, I would submit that that doesn't determine today what the Court does, because we're not discussing the force clause of 3559. The government's already, excuse me, conceded in its briefing that if this Court determines that New York robbery doesn't qualify under the enumerated offense clause of 3559, the appropriate thing would be for this Court to remand this case back to the district court for further consideration. But what strikes me as so odd about the posture of this case is, if I'm understanding right, I'm sorry, your client wasn't sentenced under this statute. That is correct, Your Honor. The only reason this statute is relevant is because it was part of the sort of strategic context under which your client pled guilty. That's correct, Your Honor. And it strikes me that as long as there's even like a colorable claim that he could have come within this federal three-strike statute, he got the benefit of the bargain with his plea bargain. He bargained to remove that risk, and he got the benefit of the bargain. The government couldn't charge him today, you know, refile an information, and it's not doing that. And so I guess I'm – it seems odd to me that we would actually decide whether this defendant could be sentenced under a statute under which he was not sentenced. Why isn't it enough that he bargained to get that risk off the table, he got the benefit of the bargain, and so he can – you know, the Court can take that into account on resentencing. The Supreme Court just held that in Hughes, that even if the guidelines range changes and you are eligible for resentencing, if the district court thinks you got the benefit of the bargain the first time, they can give you the same sentence. Well, two responses, Your Honor. I certainly agree that the procedural posture of this case is awkward, and yet we have the fact that the district court made a legal finding. That may have been unnecessary to the decision. It may have been unnecessary, but even if – my argument remains that even if the district court hadn't made the finding about 3559 that it still applied today, or if he was correct, and if it would still apply today, the original plea agreement has been completely undermined by the series of mutual mistakes contained within that agreement, such that – The plea agreement, at least as I read it, it made pretty clear that the inducement for pleading guilty here was getting this three strikes law off the table. Well, that's certainly one of the things referenced in the plea agreement, but I think it's important for the Court to consider that the guideline range, as I've argued in the briefing, was mandatory at that time, and the defendant agreed to a sentence within a mandatory guideline range that was entirely set based on the career offender guideline. Absent that career offender guideline and the armed career criminal guideline, which had the same impact on his guidelines, his sentencing range would have been 130 to 162 months at the time of sentencing, which makes the 300-month sentence that he agreed to a substantial departure upwards from that guideline range. And so when you have an error about a guideline calculation of that magnitude, it shapes the benefit of the bargain. It's a different posture – I'm sorry, Your Honor. But, you know, the district court on the resentencing, you know, considered the guideline range, and when you look at, as Hughes suggests, should be done, the district court didn't have a lengthy discussion, I'll grant you, but he indicates that it was considered. And while, you know, originally I think counts 2 and 5 were the subject of the 300 months, I think the statutory maximum on 2 was 300 months as well, which seems to take our case, you know, away from the Maybach decision of this court, which, you know, and indicate that we have something where the main issue was trying to avoid the risk of that life imprisonment. Well, Your Honor, I would suggest that what's important in this case is that the district court found it critical to his analysis of what a new sentence for Mr. Johnson would be, that he would be subject under 3559 still today. And so for that reason, he's still getting the benefit of his original bargain and the government should get the benefit of their original bargain. That was critical to the district court's analysis. And that's incorrect for the reasons that Pereira-Gomez makes clear, as well as the other reasons I've argued in my briefing about why New York robbery doesn't fit under either of the three enumerated federal offenses. And with respect to your question about, of course, the district court could consider under the 3553 factors anything the district court wanted to consider, but the fact that he made an erroneous determination about 3559 and relied on that as the reason, primary reason, to reimpose a sentence that's double the guideline range, that's important. And the district court on remand under this court's decision in Ventura could give the same sentence. He could just say, well, forget the whole plea agreement. I'm just going to look at this guy's criminal history, which, of course, is not great. I'm just going to look at the fact that maybe he would have been subject to mandatory life. And if he cuts out all the benefit of the bargain language, frankly, I don't think there'd be many grounds for an appeal if he used the 3553 factors. But the fact that he found the original plea agreement still determinative, that's the issue that I think is important here. Let me ask you to move away from that particular, from the prior plea bargain, and just ask you about the match and what kind of significance do you draw from the language in 2111 about whoever within a special maritime and territorial jurisdiction of the United States? Is it your view that that somehow skewers the match? That is my view, Your Honor, and that's my view for a few reasons. The government essentially asked this court to just ignore the element that the robbery under 2111 has to have occurred within the special maritime or judicial territory of the United States. And that essentially creates a generic robbery, just a taking that happens by force or intimidation. Let me push back a little bit on that because the 3559 begins a federal or state offense by whatever designation and wherever committed. And in light of that language that begins the statute, wherever committed, it would seem that Congress would not want a jurisdictional element to be dispositive in light of the language that it wanted, that it was looking really to the substantive elements rather than to the jurisdictional elements. And that language, wherever committed, would seem to underscore that that was what was Congress's intent when they say wherever committed. They said, well, the jurisdictional element simply doesn't matter. Well, Your Honor, I think interpreting 2111 in that way would make redundant Congress's decision to specifically reference 2113 and 2118. And it is inconsistent with the fact that in other places in the enumerated offense clause, Congress referenced generic offenses. They said extortion. They said arson. And arson is an interesting case because there is a federal arson statute, 18 U.S.C. section 81, that is just arson within the special maritime. But if we go with you on that point, that would mean that no prior state crime could ever, no prior state robbery offense, no matter how it was expressed, could ever be a serious violent felony because very few, if any, state robbery offenses are ever committed within the special maritime jurisdiction of the United States. In other words, it would essentially say that what Congress meant here, because of that jurisdictional element, if that by itself was going to destroy the match, then no prior state felony could ever qualify because, I mean, how many state robberies are committed within the special maritime jurisdiction of the United States? Not very many, Your Honor, but that's why the force clause exists in 3559. So while it's the case that few state offenses might be a categorical match for 2111, 2113, or 2118, the force... We don't need to go to the force clause if the enumerated offense statute works. I mean, I just can't see that Congress, the evidence here in this statute piles up against you because when you take the language, wherever committed, and you take the implausibility that Congress meant the 2118 to be essentially useless in terms of robbery, I don't understand your argument with respect to that particular statute. I see my time's about to expire, but if I can just respond briefly to that question. I understand the court's concern, and if that is the court's concern, I would refer you back to the Pereira-Gomez decision because it is uncontested that an element of 2111, that special maritime jurisdictional territory robbery, is that the robbery be done in the presence of another, from another person or in the presence of another, and New York robbery lacks that. So even assuming we take out the jurisdictional element, there's not a categorical match here. I want to go back to Judge Quattlebaum's question where you say that New York robbery lacks that element, but it does require the use of physical force upon another person. So why is that not sufficient to show the match with the enumerated robberies? Because the robbery, that's part of the match, that's one of the elements that matches, but the fact that it doesn't have to be done from an actual, the taking doesn't have to be from a person in real time. The Second Circuit, in analyzing New York robbery, gave the example that you could basically threaten somebody, say, meet me back here tomorrow and give me the property or the money, and that would still qualify under New York robbery because of the absence of that presence element. So the force clause was found to be a match by the Pereira-Gomez, but that other part, the presence element, is lacking, and so it's broader, and that's specifically, Pereira-Gomez found that the New York legislature wanted it to be broader. They specifically analyzed the New York robbery and looked at it and deliberately, and they, quote, deliberately revised its robbery statute to eliminate the presence element because they found that it was excluding, quote, a variety of forcible thefts that were robberies in spirit. They wanted it to be broader and have a larger categorically overbought, in this case, statute. Thank you, Your Honors. Thank you. Ms. Bockhorst. Good morning. Jennifer Bockhorst for the United States. Your Honors, the key to this case and the issue that's really before the court is whether the district court clearly erred in relying upon the factual determination that it could still consider the plea agreement in the agreed-upon sentence in the plea agreement and in determining what is the appropriate sentence in this case. I think the argument up to now even demonstrates that there's the district court just did not clearly err, regardless of how you ultimately come down on 3559. If you were deciding in a case in which 3559 had been imposed and a mandatory life sentence had been imposed, regardless of the outcome, it's close. At the very least, it's a close call. There are mountains of reasons for why 3559 still applies. What are the mountains of reasons that the enumerated provision still applies? So the three federal statutes we know parallel each other. Congress intended them to parallel each other. The Supreme Court explained that in Jones, and they cite the legislative history in drafting 2118 that Congress recognized that 2111 and 2113 were parallel statutes, and they intended the next robbery statute they wrote to parallel those. So those are a world unto itself. And when they drafted 3559 and said a federal or state offense were ever committed that looks like these three elements, they were meaning to not say you must look at generic robbery in the sense that we use in the ACCA. They mean to parallel those elements. Let me be more direct. My question was probably too broad. I'm not as interested right now in the issue of, for example, special maritime jurisdiction. I'm more interested in the recent Second Circuit case, and how is the enumerated clause still valid in light of the removal of in the presence of language from the New York statute? So when New York expanded their statute, they were intending to include the type of robbery where the robber and the person upon whom the force is being used is in one place and the thing being stolen is in another place. And I'm sorry, in the last two days I didn't think of this argument early enough to do the research myself, but I expect that if you look at what in the presence of means in federal law, it encompasses that same conduct. If a person were to walk into a bank and take hostage a customer in order to compel the manager to go get the money out of the vault and bring it back, I think that is still a bank robbery. I think common sense tells us that would be a bank robbery because it is force used in the presence of another, and that phrase itself is broad enough to encompass the use of force upon a person to compel someone else in another room or in another location to go act and get the items that's being stolen. So I think that when you look at what the element means under federal law, you'll find that they still parallel one another. Let me ask a follow-up to that. Assume hypothetically we disagree with you and that we think the Second Circuit case makes the New York statute broader than the generic robbery. What's the government's position? Does the government, aside from consideration of the force clause or another clause, is there an argument that the government has that the Senate should not be vacated? First, that it wasn't a clear error committed by the court because there's still a very good argument that it does apply. And the question before the court is not really the de novo question of whether Willie Johnson is subject to life imprisonment. It's whether the court clearly erred in concluding there was enough of a risk of that that it should still give effect to the plea agreement. So it's really a removed question that puts it back into the clear error realm. That's Judge Harris's point, that it was a risk out there that was a bundle of the risk that was taken out in connection with the plea. Yes. Okay. And then I would also say, and we would like to retract our footnote, I think the footnote saying it needs to concede was, and I can explain why we wrote that footnote, but I think that actually the force clause does settle the issue because even if it isn't a, and maybe the answer is the court doesn't even need to reach after all the question of whether the elements parallel the federal robbery statutes because the Second Circuit and the Fourth Circuit have now said that New York robbery is a force clause offense. That puts us in a strange place if you were to remand for resentencing for reconsideration of that because it also suggests, and this was our concern in writing the brief, it suggests that the 2255 was improvidently granted to begin with because if New York robbery is a force clause offense, he remains an armed career criminal and was not entitled to relief to begin with. But, of course, the United States did not appeal that. What is your position with respect to the third degree robbery and the match? Just explain it in straightforward. What is your present position with respect to the third robbery, New York third degree robbery and the match? Which statute is the most compelling example of a match? Well, Your Honor, I would submit that the three statutes have parallel elements with the exception of the jurisdictional element, that all three statutes have the same basic robbery elements and that the New York robbery is a match to that because I really believe that the federal law element of the person in the present. You're saying all three statutes do or one of the three? All three statutes do. And I think that's what Jones instructs us, is those three statutes are completely parallel to each other with the exception of that extra jurisdictional element. All right. And what do you think are the crucial elements in all three of those statutes? It's the use of force in the taking in the persons in presence of another. And in the persons in presence of another is broad enough to encompass that situation where the force is being used on the victim here in order to get the property in another location. I think I heard you say just before that, that you thought the New York statute would meet the force clause  I got two things I'd like for you to address. Before you get to the force clause, what's your position about the relevance upon another person, that language in the robbery statute, and whether that, if you could respond to the defendant's position. I'm talking about 16.00 And the question is, even if in the presence of is removed, you still in the robbery statute have the language upon another person. And does that imply in a separate place presence? So that's one question. And the second one, with respect to the force clause, do you have a problem with the seven years under the third degree, third degree of the stat robbery that the district court assumed, whether it meets the 10-year requirement of a enumerated offense, rather than the force clause? Did I confuse you? I'm sorry. Yeah, I'm sorry. I'm not sure. Let's do the second one first. The force clause you said you think applies. As I understand the force clause, you have to have a felony, the sentence of which is 10 years or more. And the district court, I think, assumed third degree robbery, which I understand may be a maximum sentence of seven years. So how do you meet the force clause if you don't have the 10 years? Do you have a position on that? Your Honor, I do not. Okay. All right. I think I've missed that issue. Okay. All right. So then with respect to whether this gets back to whether there's a match by virtue of the removal in the presence of language. And I'm trying to get an answer and follow up, I think, to a question I made and Judge Harris did about whether the language upon another person in 160.00, in effect, provides the same thing as in the presence of. It has to. Otherwise, it's extortion. Right? Otherwise, you're on the phone and you're. Well, what she said is that there's a difference that you could threaten one day and go back and rob the next. What's your position in response to that? My understanding of New York robbery is that the force needs to be employed in the context of actually getting the property. Is it somehow still part of the actual robbery being committed? Yes. Okay. And ultimately, all of this comes back to the underlying issue, which is whether the district court clearly erred in determining that the plea agreement should be given effect. I mean, and it's really what's wrong or what's odd about the procedural posture of this case, as Judge Harris has pointed out, is that we're not talking about a case and trying to determine whether the district court appropriately applied 3559 to impose a life sentence. We are just asking whether it appropriately relied upon the plea agreement. In terms of the match, I think it's important not to lose the forest for the trees. Yes, sir. And it's clear that in the enumerated clause, Congress wished between those three federal statutes, they have a pretty encompassing view of robbery. And the essence, I mean, we can always find some little tweak here or there, but the essence of those statutes is that there's the forcible taking by force and violence of something of value from the person of another, and you don't actually have to take it. I mean, you don't have to actually apply the force. You can simply threaten and intimidate, and that would be what the federal statutes are getting at. And the New York law has that basic concept in mind, that it threatens, uses or threatens physical force upon the person of another for the purpose of taking property or something of value. And you say, well, what did Congress actually mean to get at with this statute? And it wanted forcible robbery either through the actual application of force or through the intimidation and threatened use of force. It wanted those to count, and it would be hard to see in light of what Congress was trying to accomplish that this New York penal law didn't fall within that concept of robbery, which is the forcible or threatened taking of something of value from another person against that person's wishes. That's classic robbery. That's what these three statutes express. That's what the New York penal law expresses. And it seems to me the common sense of it all was, yeah, this is exactly what Congress is aiming at. Yes, sir. And that is what the government's position is. I mean, when you boiled it down to its essence, isn't that it? Yes, that is it. And it actually brings to the point, Your Honor, if the court determines that the force clause is what it's going to rely on, it may be prudent to wait until the Stokeling decision. Well, what's wrong with the enumerated clause? No, well, obviously I think the enumerated clause is the ultimate answer. But the Stokeling decision may actually, hopefully, be illuminating in the respect that if the Supreme Court does go down the road of trying to clarify that the courts, in applying the categorical approach, still need to be giving effect to what Congress clearly intended, which is I think what everyone hopes that they're going to clarify, that that may actually ultimately resolve the issue, both under the enumerated clause argument. Stokeling is an ACCA case. Yes. I mean, one of the things that strikes me about that, we're so used to the ACCA, and this is a different statute. Congress may have had different intent here, different kinds of intents. And one thing that does strike me is this one, unlike the ACCA, does have that escape valve, so that even if you fall within one of these earlier kind of generic definitions, if it turns out yours was really nonviolent, the statute isn't going to apply, which makes me think, you know, Congress may actually have intended to write a little more broadly in the front end because it had this exception. In a way, it doesn't under the ACCA. So I totally agree that we should do nothing under the force clause while Stokeling is out there. But it also does seem to me that we should be careful not to import every little kind of nuance of the ACCA into what is a different statute where there may be at least some indication that Congress intended to paint a little more broadly at the front end because it had given itself the safety valve at the back end. And, Your Honor, I'd submit it's a large indication. Yeah. I mean, Congress was careful and clear on the types of offenses that they meant for the statute to apply to. And I wanted to also just take a few minutes, if I could, to point out in the context of the clear error just how clear the plea agreement is in the fact that it is an exchange. The career offender provision is mentioned as applying only in the context of we get to refile the 851 information if it's required for a career offender. The armed career criminal status is mentioned in the plea agreement only in terms of this is the maximum penalties that you face. And whereas most of the cases regarding mutual mistake make the comment that the plea agreement is poorly drafted, this one is extremely clear that it is. The agreement is in exchange for the removal of the risk of life imprisonment. And that all gives additional basis for determining that the district court did not clearly err in finding that it was a fact that it could consider. In addition, and perhaps the most important point, is that the plea agreement also contemplated that this was to be an upward departure to begin with. The fact that ultimately the career offender guidelines put the statutory maximum 25-year sentence on the bank robbery in the middle of the guidelines clearly was not contemplated by the parties. It was not expected. They were expecting an upward departure. So Mr. Johnson actually got exactly what was anticipated at the time he signed the plea agreement, which was an upward departure to the statutory maximum sentence on the bank robbery. And if there are no further questions, thank you. Ms. Lourish. Thank you, Your Honors. I want to start by reiterating and affirming a point that Judge Quattlebaum made, which is to the extent this court has any interest in looking at the forced or residual clauses, they cannot apply because the statutory max for third-degree robbery is seven years, as the judge correctly cited. And so in addition to whatever, if the government's no longer waiving or basically agreeing that we should remand the enumerated offense clauses and apply, we know that the other two clauses can't apply for that simple reason. And I would go back to Pereira-Gomez again and just point out that, you know, Your Honor, Judge Wilkinson, you suggested that we can kind of boil down the three enumerated offenses to their essence. And I would respectfully disagree. Well, you could take either one of the three enumerated offenses. I think probably the one in the 2-1-1-1 may be the closest, but I don't. And I'm happy to just talk about 2-1-1-1. But the element of 2-1-1-1, according to the Supreme Court in Jones, and what the government has relied upon, is that it includes the robbery happened from the person or presence of another. And in the Pereira-Gomez decision, we now have the Second Circuit directly comparing New York robbery to generic robbery. And the elements they found for generic robbery was that it had to be a taking from the person or presence of another. And when they compared the two, the Second Circuit has said, no, New York robbery is different. It doesn't meet that. And specifically, they found that New York robbery can be committed through the use or threat of force to compel another to deliver a property not in his presence or simply to engage in other conduct, which aids in the commission of the larceny. And that made it broader and overbroad as compared to generic robbery, which required that presence element. And so for that reason alone, this Court can avoid the other issues in this case and just say the District Court, which relied on snipe, which relied on the Second Circuit's prior decision to define New York robbery, this is different. The District Court didn't have the benefit of this decision and should be able to reconsider to the extent that it was a significant factor in his decision to reimpose that plea agreement. He should get to reconsider it. And I would say that just to respond to the government's argument, the plea agreement, while it used the language upward departure, it specifically also used the language that Mr. Johnson agreed that he would, quote, be sentenced as a career offender. There was no question what that meant. That meant criminal history category of six. That meant offense level 34. That meant the guideline range that the pre-sentence report determined, which 300 months was squarely in the middle of. So this wasn't a case where it was a surprise that everyone agreed that language is clear. He was a career offender and he would be sentenced that way. And so it wasn't, it was not a surprise to the parties. So I think the narrowest way to resolve this is to say that the District Court made an error of law concerning 3559. 3559 in the Enumerated Offense Clause doesn't apply. And so, you know, it is a clear error review of a sentence, but we have a mixed question of law and fact here because the Court made a legal determination about the applicability of 3559. And that was, again, based on a Second Circuit case that since appears to have been functionally overturned by Pereira-Gomez. And for that reason, the District Court should have another opportunity to resentence Mr. Johnson. Thank you. Thank you. We'll come down and re-counsel and move into our final case.
judges: J. Harvie Wilkinson III, Pamela A. Harris, A. Marvin Quattlebaum Jr.